**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT VANCOUVER**

CAMERON WILSON,

Plaintiff,

Case No.: 3:26-cv-05420-TMC

v.

CITY OF RIDGEFIELD, a municipal corporation; OFFICER ANDY MARVITZ, Badge #69, individually and in his official capacity; and SERGEANT GARY DORAN, individually and in his official capacity,

Defendants.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**JURY TRIAL DEMANDED**

# I. INTRODUCTION

1. This is a civil action for declaratory, injunctive, and monetary relief to redress the egregious, willful, and malicious deprivation of rights, privileges, and immunities secured to the Plaintiff by the First, Fourth, and Fourteenth Amendments to the United States Constitution. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988.

2. The fundamental premise of this action rests upon the recognition that Plaintiff's rights are endowed by his Creator, not granted by the State, and that the United States Constitution serves to recognize and protect these pre-existing, unalienable natural rights from governmental over-

reach, arbitrary deprivation, and the tyrannical exercise of power by those entrusted with limited governmental authority.

3. This action arises from a pattern and practice of unconstitutional conduct by officers of the Ridgefield Police Department, specifically Defendants Marvitz and Doran, who, acting under color of state law, unlawfully seized Plaintiff's person without reasonable articulable suspicion or probable cause, threatened Plaintiff with arrest and ongoing harassment for exercising his Creator-endowed constitutional rights, and subsequently contacted Plaintiff's employer with false and defamatory statements in direct retaliation for Plaintiff's protected speech—all in flagrant violation of clearly established constitutional law.

## II. JURISDICTION AND VENUE

4. This Court possesses original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

5. This Court further possesses jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4), as this action seeks to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution of the United States.

6. Venue is proper in the Western District of Washington at Vancouver pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because all Defendants reside within this District, and a substantial part of the events and omissions giving rise to these claims occurred within this District, specifically within the municipal boundaries of the City of Ridgefield, Clark County, Washington.

## III. PARTIES

7. Plaintiff CAMERON WILSON is a free man, endowed by his Creator with certain unalienable rights as enumerated in this great nation's founding principles, and is a citizen of the United States and a resident of the State of Washington, residing at 1312 South 44th Avenue, Yakima, Washington 98908.

8. Defendant CITY OF RIDGEFIELD (hereinafter "the City") is a municipal corporation and political subdivision duly organized and existing under the laws of the State of Washington, and is responsible for the official policies, practices, customs, training, supervision, and discipline of the Ridgefield Police Department and all officers employed therein.

9. Defendant OFFICER ANDY MARVITZ, Badge #69 (hereinafter "Defendant Marvitz"), is a natural person and was at all times relevant to this Complaint a sworn law enforcement officer employed by the Ridgefield Police Department, acting under color of state law within the meaning of 42 U.S.C. § 1983.

10. Defendant SERGEANT GARY DORAN (hereinafter "Defendant Doran") is a natural person and was at all times relevant to this Complaint a sworn law enforcement officer and supervisor employed by the Ridgefield Police Department, holding the rank of Sergeant, acting under color of state law within the meaning of 42 U.S.C. § 1983.

11. Defendants Marvitz and Doran are sued in both their individual and official capacities.

# IV. STATEMENT OF FACTS

**A. The 2022 Precursor: Sergeant Doran's Prior Pattern of Unconstitutional Conduct and Display of Lethal Force**

12. In 2022, Plaintiff was lawfully traveling in his privately-owned recreational vehicle within the vicinity of Battle Ground, Clark County, Washington, exercising his fundamental, Creator-endowed right to travel upon the public roadways.

13. During this period, Officer Nic Siem of the Ridgefield Police Department initiated an illegal traffic stop upon Plaintiff's recreational vehicle absent any observed traffic violation, reasonable articulable suspicion, or probable cause of criminal activity.

14. Defendant Sergeant Gary Doran arrived on the scene as backup, exhibiting immediate, unprovoked, aggressive, hostile, and adversarial behavior toward Plaintiff.

15. Without lawful justification, without a warrant, and without exigent circumstances, Defendant Doran drew his department-issued service firearm and pointed it directly at Plaintiff while Plaintiff was actively attempting to comply with their demands.

16. At the time Defendant Doran drew and aimed his firearm at Plaintiff, Plaintiff's minor children were present inside the recreational vehicle.

17. Defendant Doran and Officer Siem subsequently entered Plaintiff's recreational vehicle without consent, without a warrant, and without exigent circumstances, fully aware that Plaintiff's minor children were present inside the vehicle.

18. The unlawful entry, the unjustified display of lethal force in the presence of minor children, and the aggressive conduct of Defendant Doran inflicted severe emotional trauma upon Plaintiff and his children.

19. Following this incident, all charges levied against Plaintiff arising from this encounter were dismissed without prejudice at arraignment on September 1, 2022, upon Plaintiff's filing of a notice of abatement, confirming the absence of any lawful basis for the stop, the detention, or the charges.

**B. Actual Notice to the Municipality: The August 2022 Notice of Liability**

20. On or about August 22, 2022, Plaintiff personally traveled to the Ridgefield Police Department and served a formal Notice of Liability upon then-Chief of Police Brooks, expressly detailing the constitutional violations committed by Defendant Doran during the 2022 incident.

21. Chief Brooks formally accepted the Notice of Liability on camera, acknowledging receipt on behalf of the Ridgefield Police Department and the City of Ridgefield.

22. Plaintiff engaged in a recorded conversation with Chief Brooks lasting approximately thirty (30) minutes, during which Plaintiff detailed the specific constitutional violations, the display of lethal force toward his person and in the presence of his minor children, and the unlawful entry into his recreational vehicle.

23. Despite possessing actual knowledge of Defendant Doran's unconstitutional conduct, the City of Ridgefield failed to initiate any corrective action, failed to discipline Defendant Doran, failed to provide supplemental constitutional training, and failed to implement any policy changes to prevent the recurrence of such violations, thereby demonstrating a deliberate indifference to the constitutional rights of the citizenry it purports to serve.

24. The City's deliberate indifference is further evidenced by the fact that, following the 2022 incident and the Notice of Liability, Defendant Doran was promoted to the rank of Sergeant, effectively rewarding his unconstitutional conduct rather than disciplining it.

### C. The April 25, 2023 Encounter: Plaintiff Lawfully Parked and Awaiting Employment

25. On April 25, 2023, at approximately 2:00 PM, Plaintiff was lawfully parked in his private automobile on a public side street within the city limits of Ridgefield, Clark County, Washington.

26. Plaintiff was peacefully and quietly awaiting a scheduled 2:00 PM work appointment in his capacity as an employee of Cap Concrete Coatings, engaging in no unlawful conduct whatsoever.

27. Plaintiff's vehicle was stationary, the engine was not running in a manner that would attract attention, and Plaintiff was simply sitting inside his vehicle waiting for the appointed time to arrive at the job site.

28. There were no reports of criminal activity in the area, no calls for service regarding Plaintiff or his vehicle, and no articulable facts suggesting that Plaintiff had committed, was committing, or was about to commit any crime.

### D. The Unlawful Investigatory Detention: Defendant Marvitz Initiates Contact Without Suspicion

29. Defendant Officer Andy Marvitz approached Plaintiff's vehicle and initiated an investigatory detention, questioning Plaintiff regarding the status of his license plates.

30. Defendant Marvitz did not observe any traffic infraction, as Plaintiff's vehicle was lawfully parked and stationary.

31. Defendant Marvitz did not possess reasonable articulable suspicion that Plaintiff had committed, was committing, or was about to commit any criminal offense.

32. Defendant Marvitz did not possess probable cause to believe that any crime had occurred or was occurring.

33. Defendant Marvitz did not have a warrant for Plaintiff's arrest or for the search of Plaintiff's vehicle.

34. The mere fact that a citizen is parked on a public street does not, standing alone, give rise to reasonable articulable suspicion of criminal activity sufficient to justify an investigatory detention under *Terry v. Ohio*, 392 U.S. 1 (1968).

**E. Plaintiff's Lawful Assertion of His Creator-Endowed Constitutional Rights**

35. Plaintiff lawfully and respectfully asserted his Fourth Amendment right to be free from unreasonable searches and seizures, explicitly informing Defendant Marvitz that he was not engaged in any unlawful activity and that he wished to be left alone.

36. Plaintiff respectfully requested that Defendant Marvitz cease the unlawful interrogation and allow Plaintiff to proceed unmolested to his employment appointment.

37. Plaintiff's verbal assertion of his constitutional rights constitutes speech protected by the First Amendment to the United States Constitution. *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").

**F. Defendant Marvitz's Retaliatory Escalation: Calling for Backup in Response to Protected Speech**

38. In direct retaliation for Plaintiff's lawful assertion of his Creator-endowed constitutional rights, Defendant Marvitz escalated the encounter by radioing for backup.

39. Defendant Marvitz characterized Plaintiff as "uncooperative" to dispatch and to responding

officers, solely because Plaintiff declined to submit to an unlawful interrogation and asserted his right to be free from unreasonable seizure.

40. The characterization of a citizen as "uncooperative" for exercising constitutionally protected rights is itself evidence of retaliatory animus. A citizen's refusal to answer questions during an encounter lacking reasonable suspicion cannot form the basis for further detention or escalation. *Florida v. Bostick*, 501 U.S. 429 (1991).

**G. The Arrival of Sergeant Doran: A Known Constitutional Violator Returns**

41. Shortly thereafter, Defendant Sergeant Gary Doran arrived on the scene alongside an unidentified third officer.

42. Defendant Doran is the same officer who, in 2022, drew his firearm on Plaintiff and unlawfully entered Plaintiff's recreational vehicle in the presence of Plaintiff's minor children—conduct that was the subject of the formal Notice of Liability served upon Chief Brooks on August 22, 2022.

43. Upon arrival, Defendant Doran immediately adopted a hostile, adversarial, and intimidating posture, escalating the encounter beyond any lawful scope.

**H. Defendant Doran's Explicit Threats of Ongoing Harassment: "This Is My Town"**

44. Defendant Doran explicitly threatened Plaintiff, stating on the record: "This is my town."

45. This statement demonstrates a proprietary and tyrannical view of municipal authority that is fundamentally contrary to the principles of limited government, the consent of the governed, and the recognition that governmental power is derived from and subordinate to the natural rights of the people.

46. Defendant Doran further stated, on the record: "We're going to continue to harass you because

this is our town."

47. This statement constitutes direct, unambiguous evidence of a premeditated intent to violate Plaintiff's constitutional rights, to retaliate against Plaintiff for the exercise of those rights, and to engage in an ongoing campaign of harassment and intimidation against Plaintiff.

48. Plaintiff, upon hearing this threat, stated to Defendant Doran: "Say it again so I can show it to the chief," and Defendant Doran did not retract, deny, or qualify his statements.

**I. The Unlawful Demand for Identification and Threat of Arrest**

49. Defendant Doran unlawfully commanded Plaintiff: "I am ordering you to give me your driving license."

50. This command was issued absent any reasonable articulable suspicion that Plaintiff had committed, was committing, or was about to commit a crime.

51. The Supreme Court of the United States has held that an officer may not compel a citizen to produce identification absent reasonable suspicion of criminal activity. *Brown v. Texas*, 443 U.S. 47, 52 (1979) ("In the absence of any basis for suspecting [the defendant] of misconduct, the balance between the public interest and [the defendant's] right to personal security and privacy tilts in favor of freedom from police interference.").

52. Defendant Doran explicitly threatened Plaintiff with arrest if Plaintiff refused to comply with the unlawful demand, stating: "If you fail to give me your license and ID I will place you in custody."

53. This threat of arrest for the refusal to identify absent reasonable suspicion constitutes an unreasonable seizure under the Fourth Amendment and a direct violation of clearly established law. *Brown v. Texas*, 443 U.S. at 52; *Kolender v. Lawson*, 461 U.S. 352 (1983).

54. Defendant Doran further threatened the impoundment of Plaintiff's vehicle if Plaintiff refused to submit to the unlawful demands, constituting an additional threat to deprive Plaintiff of his property without due process of law.

**J. Plaintiff's Fear and Attempt to Secure Civilian Witnesses**

55. Fearing imminent unlawful arrest, physical harm, and the deprivation of his property, Plaintiff was compelled to seek assistance from nearby civilian bystanders to witness the ongoing constitutional violations.

56. Plaintiff approached a civilian witness and stated: "Hey, these cops are harassing me, and they're threatening to throw me in jail if I don't give them my ID. But I'm just sitting here waiting for my girl. Can you just be a witness and make sure that they don't try to harass me or violate my rights or beat me up 'cause I'm not here alone and they're trying."

57. Plaintiff expressed genuine fear for his physical safety, stating to the witness: "I'm so scared. What am I supposed to do? I'm freaked out right now."

58. The civilian witness, recognizing Plaintiff's distress, offered to walk with Plaintiff to a nearby business so that Plaintiff could use a telephone.

59. Plaintiff's fear was objectively reasonable given Defendant Doran's prior display of lethal force in 2022, his explicit threats of ongoing harassment, and his threat of imminent arrest absent any lawful justification.

**K. Plaintiff's Attempt to Contact Supervisory Authority**

60. Plaintiff subsequently contacted the Ridgefield Police Department dispatch to request the presence of a superior officer to halt the ongoing deprivation of his rights by Defendants Marvitz

and Doran.

61. Plaintiff was initially informed that the Chief of Police was in meetings and unavailable.

62. Plaintiff persisted in his request, stating to dispatch: “For someone who’s violating my rights right now, currently and presently? You don’t think it’s more important that someone’s getting their rights violated?”

63. While awaiting the arrival of supervisory personnel, Plaintiff narrated the ongoing events via telephone to a third party, stating: “They moved him up to a sergeant and then he said, well, and then they said that they’re not gonna stop harassing me because this is their town. That’s what he said. That’s what he said to me. I got him on video saying it.”

**L. Supervisory Intervention and Confirmation of the Unlawful Seizure**

64. Chief of Police Cathy Doriot and Lieutenant Rachel Andrew subsequently arrived at the scene in response to Plaintiff’s request.

65. Plaintiff explained to Chief Doriot and Lieutenant Andrew the circumstances of the encounter, including Defendant Doran’s explicit threats of ongoing harassment and the demand for identification absent any crime.

66. Plaintiff informed Chief Doriot that he had previously filed a Notice of Liability with the Ridgefield Police Department under Chief Brooks regarding Defendant Doran’s prior unconstitutional conduct.

67. Chief Doriot, recognizing the absolute lack of legal justification for the seizure and the absence of any reasonable articulable suspicion, instructed Defendants Marvitz and Doran to cease their actions.

68. Chief Doriot explicitly informed Plaintiff that he was free to leave, stating: “What I’m telling

you, they're not gonna stop you now."

69. No citations, infractions, or criminal charges were issued to Plaintiff, unequivocally confirming the absence of any lawful basis for the initial stop, the prolonged detention, and the demands for identification.

70. Even after Chief Doriot ordered the officers to stand down, Defendant Doran continued to linger near Plaintiff's vehicle, prompting Plaintiff to state: "Please get away from my vehicle," to which Defendant Doran responded: "That's not gonna happen," demonstrating continued defiance of supervisory authority and ongoing harassment of Plaintiff.

71. As a direct result of the unlawful detention, Plaintiff was delayed and arrived late to his scheduled employment appointment with Cap Concrete Coatings.

**M. First Amendment Retaliation: Defendant Marvitz's Next-Day Contact with Plaintiff's Employer**

72. On April 26, 2023, the very next day following the unlawful encounter, acting with malicious intent and in direct retaliation for Plaintiff's exercise of his First and Fourth Amendment rights, Defendant Marvitz contacted Plaintiff's employer, Cap Concrete Coatings.

73. Defendant Marvitz, utilizing his official capacity and the authority of his badge and position as a sworn law enforcement officer, left a voicemail for the assistant manager, Brandy, stating: "With the Ridgefield Police Department, I'd like to chat with management or somebody regarding your employee, and need to have a conversation. If you could give me a call back, you can [phone number]. I will be off at five o'clock today, so I'll be working tomorrow. If you wanna give a call tomorrow. Again, this is Officer Marvitz, the police department."

74. Defendant Marvitz subsequently contacted Plaintiff's manager, Michael Moser, directly via telephone, escalating his retaliatory campaign beyond the initial voicemail.

75. During this communication with Michael Moser, Defendant Marvitz falsely alleged that Plaintiff was involved in criminal activity and was uncooperative with law enforcement, explicitly berating Plaintiff to his employer for Plaintiff's lawful assertion of his constitutional rights.

76. Defendant Marvitz's communications were calculated to destroy Plaintiff's professional reputation, tortiously interfere with Plaintiff's livelihood, and punish Plaintiff for declining to submit to an unlawful police encounter.

77. There existed no legitimate law enforcement purpose for contacting Plaintiff's employer. No crime had been committed. No charges had been filed. No investigation was pending. The sole purpose of the contact was retaliatory punishment for the exercise of constitutionally protected rights.

**N. The Deprivation of Liberty and Property Interests: Employment Consequences**

78. As a direct and proximate result of Defendant Marvitz's retaliatory communications, Plaintiff's employer removed him from ongoing, lucrative projects, causing immediate and tangible financial harm.

79. Plaintiff's employer expressed severe concern regarding Plaintiff's continued employment due to the police contact, resulting in a hostile work environment and profound economic instability for Plaintiff.

80. This deprivation of Plaintiff's recognized property interest in his continued employment and his liberty interest in his professional reputation and good name was executed arbitrarily, maliciously, and without any procedural safeguards or due process of law.

**O. The Exhaustion of Administrative Remedies and the City's Deliberate Indifference**

81. On August 15, 2023, Plaintiff served a formal Notice of Breach and Demand to Cure upon Chief Doriot via certified mail, detailing the constitutional violations of April 25–26, 2023, and demanding corrective action.

82. On September 21, 2023, Plaintiff served a second Notice of Breach and Demand to Cure upon Chief Doriot via certified mail, reiterating the demand for corrective action and noting the City's failure to respond to the first notice.

83. On November 29, 2023, Plaintiff served a third Notice of Breach and Demand to Cure upon Chief Doriot via certified mail, again demanding corrective action and noting the City's continued refusal to address the constitutional violations.

84. On May 30, 2024, Plaintiff submitted a formal Claim for Damages to Lee Knottnerus, Deputy City Manager of Ridgefield, quantifying the damages sustained as a result of the Defendants' unconstitutional conduct.

85. On June 7, 2024, Plaintiff presented a formal tort claim notice to the City of Ridgefield in compliance with RCW 4.96.020.

86. On June 10, 2024, Plaintiff submitted a claim to the Washington Cities Insurance Authority (WCIA), the City's insurer, which was subsequently denied.

87. On October 7, 2024, Plaintiff served a formal Notice of Intent to Sue upon the City Attorney, Defendant Marvitz, and Defendant Doran via certified mail, return receipt requested, providing final notice of Plaintiff's intent to commence this civil action.

88. Despite this exhaustive administrative exhaustion spanning over two years and comprising no fewer than six (6) separate formal notices, the City of Ridgefield has wholly failed to meaningfully investigate the incidents, failed to discipline Defendants Marvitz and Doran, failed to implement

any policy changes, and failed to compensate Plaintiff for the severe injuries sustained, demonstrating an ongoing policy, practice, and custom of deliberate indifference to the constitutional rights of the citizenry.

## V. CAUSES OF ACTION

**COUNT I: 42 U.S.C. § 1983 — Unlawful Seizure of Person in Violation of the Fourth and Fourteenth Amendments (Against Defendants Marvitz and Doran)**

89. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 88 as if fully set forth herein.

90. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

91. An investigatory stop or detention constitutes a "seizure" of the person within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 16 (1968). A person is "seized" within the meaning of the Fourth Amendment when, "by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

92. Such a seizure is constitutionally permissible only if it is supported by "reasonable, articulable suspicion that criminal activity is afoot." *Terry*, 392 U.S. at 30. The stop must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20. The officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21.

93. Defendants Marvitz and Doran, acting under color of state law, intentionally seized Plaintiff by restricting his freedom of movement through a show of authority, explicit verbal commands to produce identification, the physical presence of multiple officers and patrol vehicles blocking the area, and explicit threats of imminent physical arrest and vehicle impoundment.

94. This seizure was executed entirely without reasonable articulable suspicion or probable cause that a crime had been committed, was being committed, or was about to be committed. Plaintiff was merely parked lawfully on a public street awaiting a work appointment. The complete absence of any citation, infraction, or criminal charge confirms the utter lack of lawful justification for the seizure.

95. Defendant Doran's command to produce identification under threat of arrest, absent reasonable suspicion of a crime, violates clearly established law. The Supreme Court held in *Brown v. Texas*, 443 U.S. 47, 52 (1979), that "in the absence of any basis for suspecting [the individual] of misconduct, the balance between the public interest and [the individual's] right to personal security and privacy tilts in favor of freedom from police interference." An officer may not punish a person for refusing to identify himself when the officer lacks reasonable suspicion to believe the person is engaged in criminal conduct. *Id.*; *see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (striking down a statute requiring production of identification during a *Terry* stop as unconstitutionally vague).

96. The Ninth Circuit has consistently held that an officer who detains a person without reasonable suspicion violates clearly established Fourth Amendment rights. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *Moreno v. Baca*, 431 F.3d 633, 639 (9th Cir. 2005).

97. The seizure was objectively unreasonable under the totality of the circumstances and violated clearly established law of which a reasonable officer would have known. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (qualified immunity is overcome where the right violated was "clearly

established" such that "every reasonable official would have understood that what he is doing violates that right") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

98. As a direct and proximate result of this unconstitutional seizure, Plaintiff suffered deprivation of liberty, severe emotional distress, fear for his physical safety, humiliation, and economic damages including lost wages from arriving late to his employment appointment.

**COUNT II: 42 U.S.C. § 1983 — First Amendment Retaliation (Against Defendants Marvitz and Doran)**

99. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 98 as if fully set forth herein.

100. The First Amendment to the United States Constitution protects the right of citizens to verbally oppose or challenge police action without thereby risking arrest, detention, or retaliatory punishment. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 461–63 (1987).

101. To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) he engaged in constitutionally protected activity; (2) the defendant took adverse action against him; and (3) the protected activity was a "substantial" or "motivating" factor behind the adverse action. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019); *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

102. Plaintiff engaged in constitutionally protected speech by verbally asserting his Fourth Amendment right to be free from unreasonable seizure, by questioning the lawful authority of the officers to demand his identification absent a crime, and by recording the encounter on video—all of which constitute protected First Amendment activity. *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th

Cir. 1995) (verbal challenges to police are protected speech); *Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014) (right to record police in public).

103. Defendants Marvitz and Doran took multiple adverse actions against Plaintiff in direct response to this protected speech, including but not limited to:

(a) Escalating the encounter by calling for backup and characterizing Plaintiff as "uncooperative" for exercising his rights;

(b) Threatening Plaintiff with imminent arrest: "If you fail to give me your license and ID I will place you in custody" (Defendant Doran);

(c) Explicitly threatening ongoing harassment: "We're going to continue to harass you because this is our town" (Defendant Doran);

(d) Contacting Plaintiff's employer the following day with false and derogatory statements regarding Plaintiff's character and alleged criminal involvement (Defendant Marvitz).

104. These adverse actions would chill a person of ordinary firmness from continuing to engage in the protected speech. *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013) ("An action is adverse for First Amendment retaliation purposes if it 'would chill or silence a person of ordinary firmness from future First Amendment activities.'") (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

105. Plaintiff's protected speech was the substantial and motivating factor for Defendants' retaliatory conduct. The retaliatory animus is established by the following direct evidence:

(a) Defendant Doran's own recorded statement: "We're going to continue to harass you because this is our town," made in direct response to Plaintiff's assertion of his rights;

(b) Defendant Marvitz's characterization of Plaintiff as "uncooperative" solely for exercising his constitutional right to decline questioning;

(c) The temporal proximity between Plaintiff's assertion of rights on April 25, 2023, and Defendant Marvitz's retaliatory contact with Plaintiff's employer on April 26, 2023—a mere twenty-four (24) hours later;

(d) The complete absence of any legitimate law enforcement purpose for contacting Plaintiff's employer, as no crime had been committed, no charges had been filed, and no investigation was pending.

106. As a direct and proximate result of this First Amendment retaliation, Plaintiff suffered profound reputational harm, loss of income, interference with lucrative employment contracts, severe emotional distress, and a chilling effect on his willingness to exercise his constitutional rights in future encounters with law enforcement.

**COUNT III: 42 U.S.C. § 1983 — Deprivation of Liberty and Property Without Due Process of Law (Stigma-Plus) in Violation of the Fourteenth Amendment (Against Defendant Marvitz)**

107. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 106 as if fully set forth herein.

108. The Fourteenth Amendment to the United States Constitution prohibits the State from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.

109. Plaintiff possesses a recognized property interest in his continued employment with Cap Concrete Coatings and a liberty interest in his professional reputation and good name. *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972) ("Liberty" under the Fourteenth Amendment includes "the right of the individual . . . to engage in any of the common occupations of life."); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to

be heard are essential.").

110. Defendant Marvitz, acting under color of state law, intentionally disseminated false, stigmatizing, and derogatory information to Plaintiff's employer, alleging criminal involvement and characterizing Plaintiff as uncooperative with law enforcement.

111. The dissemination of this false and stigmatizing information was coupled with a tangible deprivation of Plaintiff's property interest, specifically: (a) Plaintiff was removed from ongoing lucrative projects; (b) Plaintiff's employer expressed severe concern regarding his continued employment; and (c) Plaintiff suffered economic instability and diminished earning capacity.

112. This combination of government-imposed stigma plus a tangible deprivation of a protected interest constitutes a "stigma-plus" violation of Plaintiff's procedural due process rights under the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 708–09 (1976); *Roth*, 408 U.S. at 573; *Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991).

113. This conduct was executed arbitrarily, maliciously, and without providing Plaintiff any procedural safeguards, notice, or opportunity to be heard, effectively depriving Plaintiff of his livelihood and his good name without the due process of law guaranteed by the Fourteenth Amendment.

**COUNT IV: 42 U.S.C. § 1983 — Municipal Liability Under *Monell* (Against Defendant City of Ridgefield)**

114. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 113 as if fully set forth herein.

115. A municipality may be held liable under 42 U.S.C. § 1983 when the execution of its official policy or custom inflicts the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal liability may also arise from a municipality's deliberate indifference to the need to train or supervise its officers. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

116. The City of Ridgefield is liable for the constitutional violations suffered by Plaintiff because its failure to adequately train, supervise, and discipline its officers amounts to deliberate indifference to the rights of individuals with whom its officers come into contact.

117. The City's deliberate indifference is established by the following facts:

(a) The City received actual notice of Defendant Doran's unconstitutional conduct via the August 22, 2022 Notice of Liability served personally upon Chief Brooks;

(b) Despite this actual notice, the City failed to discipline Defendant Doran, failed to provide supplemental constitutional training, and instead promoted Defendant Doran to the rank of Sergeant;

(c) The same officer (Defendant Doran) who committed the 2022 constitutional violations committed substantially similar violations in 2023, proving that the City's failure to act was the direct and proximate cause of the subsequent deprivation;

(d) The City received no fewer than six (6) additional formal notices between August 2023 and October 2024, and still failed to take any corrective action;

(e) The City's insurer denied Plaintiff's claim, and the City itself refused to investigate, discipline, or compensate.

118. The City of Ridgefield's training and disciplinary policies were constitutionally deficient in at least the following areas:

(a) The requirements for reasonable articulable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968);

(b) The prohibition against demanding identification absent reasonable suspicion under *Brown v. Texas*, 443 U.S. 47 (1979);

(c) The prohibition against retaliation for the exercise of First Amendment rights under *City of Houston v. Hill*, 482 U.S. 451 (1987);

(d) The duty to investigate and discipline officers following formal citizen complaints of constitutional violations;

(e) The prohibition against officers contacting citizens' employers in retaliation for the exercise of constitutional rights.

119. This failure to train, supervise, and discipline was the "moving force" behind the violations of Plaintiff's constitutional rights on April 25 and 26, 2023. *City of Canton*, 489 U.S. at 389. The fact that the same officer who committed the 2022 violations committed substantially similar violations in 2023—after the City received actual notice and failed to act—is "the kind of evidence that will support a finding of deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

120. Additionally, the City of Ridgefield maintained an unconstitutional custom and practice of tolerating, condoning, and ratifying the unconstitutional conduct of its officers, as evidenced by its complete failure to investigate or discipline Defendants Marvitz and Doran despite overwhelming evidence of constitutional violations and repeated formal complaints. *Monell*, 436 U.S. at 690–91.

**COUNT V: 42 U.S.C. § 1983 — Conspiracy to Deprive Civil Rights in Violation of 42 U.S.C. § 1985(3) (Against Defendants Marvitz and Doran)**

121. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

122. Defendants Marvitz and Doran, acting in concert and under color of state law, reached an agreement, understanding, or meeting of the minds to deprive Plaintiff of his constitutional rights, specifically his Fourth Amendment right to be free from unreasonable seizure and his First Amendment right to be free from retaliation for the exercise of protected speech.

123. The conspiracy is evidenced by: (a) Defendant Marvitz's radio call for backup characterizing Plaintiff as "uncooperative"; (b) Defendant Doran's immediate escalation upon arrival; (c) the coordinated threats of arrest and harassment; and (d) Defendant Marvitz's next-day retaliatory contact with Plaintiff's employer, which could only have been motivated by information shared between the Defendants regarding Plaintiff's assertion of his rights.

124. As a direct and proximate result of this conspiracy, Plaintiff suffered the constitutional injuries described herein. *42 U.S.C. § 1985(3)*; *Griffin v. Breckenridge*, 403 U.S. 88 (1971).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff CAMERON WILSON, a free man endowed by his Creator with certain unalienable rights, respectfully prays that this Honorable Court enter judgment in his favor and against the Defendants, jointly and severally, as follows:

1. For compensatory damages against Defendant Marvitz in an amount to be determined at trial, but not less than $150,000.00, to compensate Plaintiff for his economic losses (including lost wages, diminished earning capacity, and loss of lucrative employment contracts), loss of liberty, emotional distress, humiliation, reputational harm, and pain and suffering arising from Defendant Marvitz's unconstitutional conduct;

2. For compensatory damages against Defendant Doran in an amount to be determined at trial, but not less than $100,000.00, to compensate Plaintiff for his loss of liberty, emotional distress, humiliation, fear for his physical safety, and pain and suffering arising from Defendant Doran's unconstitutional conduct, threats, and harassment;

3. For compensatory damages against Defendant City of Ridgefield in an amount to be determined at trial, but not less than $250,000.00, for its deliberate indifference, failure to train,

failure to supervise, failure to discipline, and ratification of the unconstitutional conduct of its officers;

4. For punitive damages against Defendant Marvitz in his individual capacity in an amount to be determined at trial, but not less than $100,000.00, for his malicious, willful, and wanton disregard for Plaintiff's constitutional rights, specifically his retaliatory contact with Plaintiff's employer calculated to destroy Plaintiff's livelihood. *Smith v. Wade*, 461 U.S. 30 (1983);

5. For punitive damages against Defendant Doran in his individual capacity in an amount to be determined at trial, but not less than $100,000.00, for his reckless and callous disregard for Plaintiff's constitutional rights, his explicit threats of ongoing harassment, his display of lethal force in 2022, and his pattern of unconstitutional conduct. *Smith v. Wade*, 461 U.S. 30 (1983);

6. For a declaratory judgment, pursuant to 28 U.S.C. §§ 2201–2202, that the acts, policies, practices, and customs of the Defendants violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution;

7. For injunctive relief compelling the City of Ridgefield to implement comprehensive constitutional training protocols, independent oversight mechanisms, and meaningful disciplinary procedures to prevent the recurrence of such abuses;

8. For Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, should Plaintiff retain counsel, as well as all allowable costs and expenses incurred in the prosecution of this action;

9. For pre-judgment and post-judgment interest at the maximum rate allowed by law; and

10. For such other and further relief as this Court deems just, proper, and equitable.

## VII. JURY DEMAND

125. Pursuant to the Seventh Amendment to the United States Constitution and Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff CAMERON WILSON hereby demands a trial by jury on all claims and issues so triable in this action.

## VIII. VERIFICATION

I, Cameron Wilson, the undersigned Plaintiff, do hereby declare and affirm under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I am the Plaintiff in the above-styled action, that I have read the foregoing Complaint and know the contents thereof, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 22nd day of April, 2026.

/s/Cameron James Wilson

Plaintiff, Pro Se

Respectfully submitted,

/s/Cameron James Wilson

Plaintiff, *In Propria Persona*

As a free man, endowed by my Creator

with certain unalienable rights.

1312 South 44th Avenue

Yakima, WA 98908

(503) 496-9239

cam@tlatoani-machi.com